831 So.2d 143 (2002)
Amos Lee KING, Petitioner,
v.
Michael W. MOORE, etc., Respondent.
No. SC02-1457.
Supreme Court of Florida.
October 24, 2002.
William Jennings, Capital Collateral Regional CounselMiddle Region, and Kevin T. Beck, Assistant CCRC, Eric Pinkard, Assistant CCRC, and Mark Gruber, Assistant CCRC, Middle Region, Tampa, FL; and Mark E. Olive of Law Offices of Mark E. Olive, P.A., Tallahaseee, FL, for Petitioner.
*144 Robert A. Butterworth, Attorney General, Carol M. Dittmar, Senior Assistant Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Respondent.
Charles T. Canady, General Counsel, and Wendy W. Berger, Assistant General Counsel, Tallahassee, FL, for Honorable Jeb Bush, Governor of the State of Florida; and Arthur I. Jacobs, General Counsel, Fernandino Beach, FL, and Raymond L. Marky, Assistant State Attorney, Second Judicial Circuit, Tallahassee, FL, for Florida Prosecuting Attorney Association, Amicus Curiae.
Nancy Daniels, Public Defender, Second Judicial Circuit, and President-elect, The Florida Public Defender Association, Inc., Tallahassee, FL; Bennett H. Brummer, Public Defender, and Christina A. Spaulding, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL; Carey Haughwout, Public Defender, and Gary Caldwell, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL; and Robert Wesley, Public Defender, and George Allen Couture, Assistant Public Defender, Ninth Judicial Circuit, Orlando, FL, for The Florida Public Defender Association, Inc., Amicus Curiae.
Robert Augustus Harper, Jr. of Robert Augustus Harper Law Firm, P.A., Tallahasee, FL; and James T. Miller, Chair, Amicus Committee, FACDL, Jacksonville, FL, for Florida Association of Criminal Defense Lawyers, Amicus Curiae.
PER CURIAM.
Amos Lee King, a prisoner under sentence of death and an active death warrant, petitions this Court for a writ of habeas corpus.[1] He seeks relief pursuant to Ring v. Arizona, 536 U.S. 584, ___, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002), wherein the United States Supreme Court held unconstitutional the Arizona capital sentencing statute "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty."
Although King contends that he is entitled to relief under Ring, we decline to so hold. The United States Supreme Court in February 2002 stayed King's execution and placed the present case in abeyance while it decided Ring.[2] That Court then, in June 2002, issued its decision in Ring, summarily denied King's petition for certiorari, and lifted the stay without mentioning Ring in the King order.[3] The Court did not direct the Florida Supreme Court to reconsider King in light of Ring.
Significantly, the United States Supreme Court has repeatedly reviewed and upheld Florida's capital sentencing statute over the past quarter of a century[4] and although King contends that there now are areas of "irreconcilable conflict" in that precedent, the Court in Ring did not address this issue. In a comparable situation, the United States Supreme Court held:
If a precedent of this Court has direct application in a case, yet appears to rest *145 on reasons rejected in some other line of decisions, the [other courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.
Rodriquez De Quijas v. Shearson/American Express, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
Accordingly, we deny King's petition for habeas relief. This Court's stay of execution shall terminate at 5 p.m. on the thirtieth day following the filing of this opinion. No motion for rehearing will be allowed.
It is so ordered.
WELLS, J., and HARDING, Senior Justice, concur.
HARDING, Senior Justice, concurs with an opinion.
WELLS, J., concurs specially with an opinion.
ANSTEAD, C.J., and SHAW and LEWIS, JJ., concur in result only with opinions.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD, C.J., concurs.
QUINCE, J., recused.
HARDING, Senior Justice, concurring.
I concur with the opinion for the reasons stated therein. As indicated in my concurring opinion in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), the Court needs to say no more.
WELLS, J., concurring specially.
I concur with the opinion and decision to deny relief in this case and in Bottoson v. Moore, 833 So.2d 693 (Fla.2002). I write specially to state that my opinion remains the same as it was on July 8, 2002, when this Court entered the stays of execution in this case and in Bottoson. At the time those orders were entered, I dissented to the granting of the stays and stated:
I find no legal basis to stay the execution in this case. We have finally adjudicated this case. No United States constitutional law applicable to the Florida capital sentencing statute has been held by the Supreme Court of the United States to have changed. To the contrary, the Supreme Court has removed any obstacle for this execution to occur. We are bound by their application of federal constitutional law.
King v. Moore, 824 So.2d 127, 128 (Fla. 2002) (Wells, J., dissenting). The extensive cases which I set forth in my dissenting opinion continue to control this Court's decision in the instant cases because the cited United States Supreme Court decisions are directly ruling on Florida's capital sentencing statute.
I also write separately to state my disagreement with much of the analysis in Chief Justice Anstead's concurring in result only opinion in Bottoson[5] and with the analysis in Justice Pariente's concurring in *146 result only opinions in Bottoson and in this case. Bottoson, of course, deals with the very same issues concerning Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which are the subject of this case.[6] I also do not agree with Justice Shaw that Florida's aggravating factors are the functional equivalent of elements of a greater offense. Reaching that conclusion would overrule United States Supreme Court precedent. See Hildwin v. Florida, 490 U.S. 638, 640, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) ("[T]he existence of an aggravating factor here is not an element of the offense but instead is `a sentencing factor that comes into play only after the defendant has been found guilty.'" (quoting McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986))).
I specifically disagree with much of what is written in the various concurring opinions regarding the operation of Florida's capital sentencing statute. I do not believe that these individual explanations, which are hypothetical as to how Florida's capital sentencing statute is applied, are necessary or even helpful. Such explanations are incomplete and are inherently written with the writer's philosophic spin on how Florida's capital sentencing statute is applied. The operation of Florida's statute is best explained by reviewing the twenty-six years of precedent from this Court and from the United States Supreme Court that has actually applied Florida's statute to a variety of distinct factual circumstances.
The twenty-six years of precedent directly analyzing and applying Florida's capital sentencing statute include United States Supreme Court decisions thoroughly and accurately analyzing the operation of Florida's statute. Some of those analyses, but not an exhaustive list, include Proffitt v. Florida, 428 U.S. 242, 251-60, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Harris v. Alabama, 513 U.S. 504, 518, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); and Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In particular, the Court's opinion in Lambrix contains a detailed analysis of Florida's capital sentencing statute and its jurisprudential history.
I believe that this Court's responsibility is to recognize the plain history of what has occurred in these cases. That history is:
1. In this Court's January 2002 opinions, issued after King and Bottoson were scheduled to be executed, this Court specifically denied King and Bottoson's Apprendi[7] claims.
2. On January 23, 2002, the United States Supreme Court stayed King's execution and, on February 5, 2002, stayed Bottoson's execution with statements that the stays would terminate automatically if certiorari was not granted.
*147 3. On June 24, 2002, the United States Supreme Court issued its decision in Ring v. Arizona.
4. On June 28, 2002, the United States Supreme Court denied certiorari in King and Bottoson's cases, which automatically terminated the stays and allowed the executions to go forward.[8]
To reach the conclusion that Ring somehow undermines Florida's capital sentencing scheme as it was applied to King or Bottoson, it is necessary to conclude that the United States Supreme Court made the decision to terminate the King and Bottoson stays of execution even though Ring rendered Florida's statute unconstitutional as it had been applied to King and Bottoson. I cannot conclude that the United States Supreme Court would have permitted King and Bottoson to be executed if that court determined that Ring invalidated the death sentences imposed in these cases. The United States Supreme Court, which had entered the stays in January 2002 after all appeals in this Court had been exhausted, knew the effect of its termination of its stays was to remove any federal court barrier to the executions, which could then be rescheduled and carried out. I conclude that it must logically follow that if the United States Supreme Court had concluded that Florida's capital sentencing statute was rendered unconstitutional as applied to King and Bottoson for the reasons stated in Ring, it would have granted certiorari and remanded King and Bottoson to this Court for further consideration in light of Ring v. Arizona.
Importantly, Florida's capital sentencing statute has been thoroughly and repeatedly examined by the United States Supreme Court over the past twenty-six years. Over this twenty-six-year period, Florida's citizens and Florida's judiciary have relied in good faith upon these decisions of the United States Supreme Court. Cf. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 401, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (stating that a basic reason for stare decisis is maintaining public faith in the judiciary). The State has sentenced individuals to death, confined individuals in a severe and special state of confinement with limited privileges, and executed fifty-three individuals in reliance on the constitutionality of Florida's capital sentencing statute as determined by the decisions of the United States Supreme Court. I cannot agree with the concurring opinions in this case and Bottoson which contend that the Court's ruling in Ring suddenly undermines the twenty-six years of judicial precedent which has been applied to these cases.
At the time this opinion is released, Florida has 369 individuals confined in special confinement on death row. Over one hundred of these individuals have been so confined for in excess of fifteen years. A list of those confined on death row begins with an individual who was received on death row on April 11, 1974. King committed the murder for which he has been *148 sentenced to death in 1977, and Bottoson committed the murder for which he has been sentenced to death in 1979. King has been held on Florida's death row for more than twenty-four years and Bottoson for more than twenty. During that time, King and Bottoson's death sentences have been upheld based upon and in reliance on the decisions of both the United States Supreme Court and this Court upholding the constitutionality of Florida's capital sentencing statute.
The extreme length of time that Florida inmates have been kept on death row has been due in substantial part to shifting constitutional analysis of death penalty statutes in the 1980s, and in substantial part to issues related to the competent representation of defendants in trials and the representation of defendants in postconviction proceedings. In the 1990s, the jurisprudence related to the death penalty statutes stabilized. In Florida, beginning in the mid-1990s, this State made real progress in ensuring that procedural safeguards were extended to alleviate other concerns. For example, in cooperation with the Florida Legislature, this Court ensured that every inmate on Florida's death row has postconviction counsel paid for by the State of Florida. With this representation there are procedures in place for effective postconviction review of the reliability of the defendant's trial and sentencing proceedings.
Extending Ring so as to render Florida's capital sentencing statute unconstitutional as applied to either King or Bottoson would have a catastrophic effect on the administration of justice in Florida and would seriously undermine our citizens' faith in Florida's judicial system. If Florida's capital sentencing statute is held unconstitutional based upon a change in the law applicable to these cases, all of the individuals on Florida's death row will have a new basis for challenging the validity of their sentences on issues which have previously been examined and ruled upon. These challenges could possibly result in entitlements to entire repeats of penalty phase trials, in turn leading to repeats of postconviction proceedings, and then new federal habeas proceedings. Evidence will clearly have grown stale or have been lost or destroyed, witnesses will be unavailable, and memories will surely have faded. Importantly, all of those involved in these human tragedies will have to relive horrid experiences in order to reestablish the factual bases of these cases, many which are undeniably heinous.
Finally, I renew my statements from my dissent in the July 8, 2002, orders granting the stays regarding my concern about what is occurring in our trial courts while the executions in these cases are stayed. Contrary to the speculative suggestions of Justice Pariente and Justice Shaw for fixing Florida's constitutionally approved capital sentencing procedure, it is my belief that what our trial courts are to do is to follow the United States Supreme Court's precedent regarding the Florida statutes, this Court's existing precedent, and the Florida statutes.
ANSTEAD, C.J., concurring in result only.
I concur in the denial of relief in this case, but with the same considerations and concerns expressed in my separate opinion in Bottoson v. Moore, 833 So.2d 693 (Fla. 2002).
SHAW, J., concurring in result only.
King's death sentence was based on at least one "death qualifying" aggravating circumstance: "previous conviction of violent *149 felony."[9] For the reasons stated in my concurring in result only opinion in Bottoson v. Moore, 833 So.2d 693 (Fla. 2002), I agree that King is not entitled to relief.
PARIENTE, J., concurring in result only.
For the reasons stated in my concurrence in Bottoson, I concur in denying relief based on Ring. As in Bottoson, one of the aggravators found in King's case was a "previous conviction of violent felony." See King v. State, 514 So.2d 354, 356 (Fla.1987). Moreover, in this case, the jury reached a unanimous (12-0) recommendation of death, necessarily finding the existence of one or more aggravators beyond a reasonable doubt.
In this concurring opinion I write separately in an attempt to place the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), in the historical context of that Court's jurisprudence regarding the constitutionality of Florida's death penalty statute. Although I acknowledge that the United States Supreme Court has previously upheld Florida's current death penalty statute as constitutional in a series of decisions, it is important to note that the majority of the prior decisions were primarily based on Eighth Amendment[10] challenges to our sentencing structure. The principle of constitutional law that the Sixth Amendment right to jury trial[11] has specific application to sentencing, beginning with the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and extended specifically to capital sentencing in Ring, is unanticipated by the prior cases that upheld Florida's death penalty statute against constitutional attack. While Justice Wells has pointed to a number of United States Supreme Court decisions "thoroughly and accurately analyzing the operation of Florida's statute," in my view the Ring decision does have implications for this precedent.
At the heart of the continuing debate over capital punishment is the recognition that "death is a different kind of punishment from any other which may be imposed in this country." Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); see also Furman v. Georgia, 408 U.S. 238, 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring) ("The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability, ... in its rejection of rehabilitation ... [and] in its absolute renunciation *150 of all that is embodied in our concept of humanity."). In a per curiam opinion consisting of one paragraph, the United States Supreme Court held in Furman that the unlimited and unguided imposition of the death penalty violated the Eighth Amendment to the Constitution.[12] At a minimum, Furman has been construed as holding that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion). Furman and its progeny[13] "provide the basis for what a majority of the Supreme Court agree are the two requirements of a constitutional capital sentencing scheme: guiding and limiting the discretion of the sentencing body, and affording that body the opportunity to take into consideration the individual circumstances of the offender and the offense." United States v. Fell, 217 F.Supp.2d 469, 476 (D.Vt.2002).
At the time of Furman, Florida's sentencing statute did not contain specific standards for the imposition of the death penalty.[14]See § 921.141, Fla. Stat. (1971). In response to the United States Supreme Court's holding in Furman prohibiting sentencing schemes that did not protect against the arbitrary application of the death penalty, many states passed a variety of new statutes that set forth aggravating circumstances that, if found to exist, would subject the individual to the death penalty. As noted by Justice Scalia in his concurring opinion in Ring, "[w]hat compelled Arizona (and many other States) to specify particular `aggravating factors' that must be found before the death penalty can be imposed was the line of [Supreme Court] cases beginning with Furman." 536 U.S. at___, 122 S.Ct. at 2444 (Scalia, J., concurring); see also Apprendi, 530 U.S. at 522-23, 120 S.Ct. 2348 (Thomas, J., concurring) ("[I]n the area of capital punishment, unlike any other area, we have imposed special constraints on a legislature's ability to determine what facts shall lead to what punishmentwe have restricted the legislature's ability to define crimes."); Maynard v. Cartwright, 486 U.S. 356, 362, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) ("Since Furman, our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action.").
Within months of the Furman decision, Florida enacted a revised death sentencing statute that represented an effort by our *151 Legislature to comply with the Eighth Amendment demands imposed by Furman.[15] In State v. Dixon, 283 So.2d 1 (Fla.1973), this Court upheld the revised statute against an Eighth Amendment challenge. We emphasized that the five steps between a guilty verdict and the imposition of the death penalty were inserted into the statute to ensure that judicial discretion in the decision to impose death is "reasonable and controlled." Id. at 7. In upholding our death penalty statute in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court praised Florida's statute and noted:
In response to Furman v. Georgia, the Florida Legislature adopted new statutes that authorize the imposition of the death penalty on those convicted of first-degree murder. At the same time Florida adopted a new capital-sentencing procedure, patterned in large part on the Model Penal Code. Under the new statute, if a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain legislatively specified aggravating and mitigating circumstances.

Id. at 247-48, 96 S.Ct. 2960 (citations omitted) (emphasis supplied). In upholding Florida's statute as constitutional under the Eighth and Fourteenth Amendments, the Supreme Court in Proffitt compared Florida's statute to the Georgia statute upheld in Gregg and stated:
The basic difference between the Florida system and the Georgia system is that in Florida the sentence is determined by the trial judge rather than by the jury. This Court has pointed out that jury sentencing in a capital case can perform an important societal function, but it has never suggested that jury sentencing is constitutionally required. And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases.

Proffitt, 428 U.S. at 252, 96 S.Ct. 2960 (citation and footnote omitted) (emphasis supplied). To the extent that Proffitt holds that jury sentencing is not constitutionally mandated, Proffitt remains good law in light of Ring. Indeed, Ring does not hold that either the Sixth or the Eighth Amendment requires jury sentencing. See 536 U.S. at ___, 122 S.Ct. at 2445 (Scalia, J., concurring) ("[T]oday's judgment has nothing to do with jury sentencing. What today's decision says is that the jury must find the existence of the fact that an aggravating factor existed.").
Moreover, the position that "judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment," Proffitt, 428 U.S. at 252, 96 S.Ct. 2960, has no application to the Sixth Amendment jurisprudence that is at the heart of Ring. In Ring, Arizona argued that judicial authority over the finding of aggravating factors may be a better way of ensuring against arbitrary application of the death penalty. However, while the purpose of the Eighth Amendment may be to prevent *152 arbitrary application of the death penalty, the United States Supreme Court held in Ring that the "Sixth Amendment jury trial right ... does not turn on the relative rationality, fairness, and efficiency of potential factfinders." Ring, 536 U.S. at ___, 122 S.Ct. at 2442. Thus, while the Supreme Court in Proffitt approved and praised the Florida statute, it is important to note that the Court's decision was made within the context of the Eighth, not the Sixth, Amendment.
In Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), the Supreme Court again upheld Florida's sentencing scheme against constitutional challenge-this time based on both the Eighth and Sixth Amendments. In Spaziano, the defendant argued that the Court's imposition of the death sentence after the jury had recommended life (i.e. the override) violated both the Eighth and the Sixth Amendments. See id. at 458, 104 S.Ct. 3154. However, the defendant's fundamental argument for the asserted Sixth Amendment violation was that the capital sentencing decision was one that should be made in all cases by a jury. See id. In rejecting this argument, the Court stated that "there [was] no ... danger involved in denying a defendant a jury trial on the sentencing issue of life or death. The sentencer, whether judge or jury, has a constitutional obligation to evaluate the unique circumstances of the individual defendant and the sentencer's decision for life is final." Id. at 459, 104 S.Ct. 3154. In other words, the defendant in Spaziano never based his Sixth Amendment argument on the premise that aggravating factors must be found by a jury beyond a reasonable doubt.[16]
Although the reasoning relied upon by the Court in Spaziano may be suspect in light of Ring, the ultimate holding remains valid. It is important, however, to understand that in Spaziano, the Court did not consider the precise issue addressed in Ringthat is, whether the Sixth Amendment requires a jury finding of aggravating factors. See Ring, 536 U.S. at ___, 122 S.Ct. at 2441; cf. Jones v. United States, 526 U.S. 227, 250, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (stating that "Spaziano contain[ed] no discussion of the sort of factfinding before us in this case. It addressed the argument that capital sentencing must be a jury task and rejected that position on the ground that capital sentencing is like sentencing in other cases, being a choice of the appropriate disposition, as against an alternative or a range of alternatives"). The Court in Spaziano addressed only whether the Sixth Amendment required jury sentencing. As noted above, Ring does not hold that the Sixth Amendment requires jury sentencing.
The United States Supreme Court decision upholding Florida's death statute that, in my view, may be most difficult to reconcile with Ring is Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). In Hildwin, the jury returned a unanimous recommendation of death. Despite the unanimous recommendation by the jury, the defendant in Hildwin argued that the Florida capital sentencing scheme violated the Sixth Amendment because the scheme permitted the imposition of death *153 without a specific finding by the jury as to the aggravating circumstances. See id. at 639, 109 S.Ct. 2055. The Supreme Court rejected this argument based, in part, on its prior holding in Spaziano that the Sixth Amendment did not require jury sentencing. See Hildwin, 490 U.S. at 640, 109 S.Ct. 2055. Although Hildwin cited Spaziano as authority, Hildwin was actually "the first case to deal expressly with factfinding necessary to authorize imposition of the more severe of alternative sentences." Jones, 526 U.S. at 250, 119 S.Ct. 1215. The Hildwin Court stated:
If the Sixth Amendment permits a judge to impose a sentence of death when the jury recommends life imprisonment, however, it follows that it does not forbid the judge to make the written findings that authorize imposition of a death sentence when the jury unanimously recommends a death sentence.

... Like the visible possession of a firearm in McMillan [v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)], the existence of an aggravating factor here is not an element of the offense but instead is "a sentencing factor that comes into play after the defendant has been found guilty." Accordingly, the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by a jury.
490 U.S. at 640-41, 109 S.Ct. 2055 (citations omitted) (emphasis supplied). The Supreme Court's reasoning in Hildwin appears contrary to the clear language in Ring, which held that, "[b]ecause Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Ring, 536 U.S. at ___, 122 S.Ct. at 2443 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Thus, even though the Court in Ring did not explicitly recede from Hildwin, Ring may call into question the continuing constitutional validity of Hildwin.
However, it should be noted that the ultimate holding in Hildwin can perhaps be reconciled with Ring to the extent that Hildwin holds that "the Sixth Amendment... does not forbid the judge to make the written findings that authorize imposition of a death sentence when the jury unanimously recommends a death sentence." Hildwin, 490 U.S. at 640, 109 S.Ct. 2055 (emphasis supplied). Indeed, when the jury has made a unanimous recommendation of death, the jury has implicitly found at least one aggravating factoras occurred in King's case. Thus, Hildwin may still be valid and consistent with Ring to the extent that Hildwin holds that the Sixth Amendment permits the judge to make the written-findings of fact that support the death sentence only after the jury has implicitly found at least one aggravator with a unanimous death recommendation. This interpretation of Hildwin would not be inconsistent with the Court's holding in Ring.
One year after the Hildwin decision, the Supreme Court decided Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the very case that was explicitly overruled by Ring. Supporting the argument advanced abovethat the Hildwin holding is suspect in light of Ringis the fact that in Walton the Court relied on its prior holding in Hildwin to find the challenged Arizona statute constitutional.
We repeatedly have rejected constitutional challenges to Florida's death sentencing scheme, which provides for sentencing by the judge, not the jury. Hildwin. ...
The distinctions Walton attempts to draw between the Florida and Arizona *154 statutory schemes are not persuasive. It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation is not binding on the trial judge. A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona.
Walton, 497 U.S. at 648, 110 S.Ct. 3047. In Walton, the defendant argued that in Florida aggravating factors were only "sentencing considerations" while in Arizona the aggravators were "elements of the offense" that required a jury finding under the Sixth Amendment. Id. In rejecting this argument, the Court stated that "the Constitution does not require that the... State ... denominate aggravating circumstances `elements' of the offense or permit only a jury to determine the existence of such circumstances." Id. at 649, 110 S.Ct. 3047. Thus, according to the Court in Walton, the Sixth Amendment did not require that juries make factual findings as to aggravating circumstances. See id.
Walton was decided in 1990. Ten years after Walton, the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), a decision that inescapably changed the landscape of Sixth Amendment jurisprudence. As articulated by the Court in Ring, in Apprendi,
[t]he defendant ... was convicted of ... second-degree possession of a firearm, an offense carrying a maximum penalty of ten years under New Jersey law. On the prosecutor's motion, the sentencing judge found by a preponderance of the evidence that Apprendi's crime had been motivated by racial animus. The finding triggered application of New Jersey's `hate crime enhancement,' which doubled Apprendi's maximum authorized sentence....
[The Court] held that Apprendi's sentence violated his right "to a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."... "Merely using the label `sentence enhancement' to describe the [second act] surely does not provide a principled basis for treating [the two acts] differently."
The dispositive question, [the Court] said, "[was] one not of form, but of effect." If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that factno matter how the State labels itmust be found by a jury beyond a reasonable doubt.
Ring, 536 U.S. at ___ _ ___, 122 S.Ct. at 2439-40 (citations omitted) (emphasis added).
Notwithstanding its holding, the Court in Apprendi stated that Walton and Apprendi could be reconciled.
The key distinction ... was that a conviction of first-degree murder in Arizona carried a maximum sentence of death. "[O]nce a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed."
The Apprendi dissenters called the Court's distinction of Walton "baffling." The Court claimed that "the jury makes all of the findings necessary to expose the defendant to a death sentence." That, the dissent said, was "demonstrably untrue," for a "defendant convicted of first-degree murder in Arizona cannot receive a death sentence unless a judge *155 makes the factual determination that a statutory aggravating factor exists. Without that critical finding, the maximum sentence to which the defendant is exposed is life imprisonment, and not the death penalty."
Ring, 536 U.S. at ___, 122 S.Ct. at 2440 (citations omitted). Despite the arguable conflict between Walton and Apprendi, the Court's decision in Walton that the Sixth Amendment did not apply to the factual findings of aggravating circumstances in the context of capital sentencing remained good law in Apprendi's shadow. Consequently, in 2001 it was against the Walton/Apprendi landscape that this Court decided Mills v. Moore, 786 So.2d 532, 536-37 (Fla.2001). We stated in Mills:
Because Apprendi did not overrule Walton, the basic scheme in Florida is not overruled either.
... [O]n its face, Apprendi is inapplicable to [Mills.]

No court has extended Apprendi to capital sentencing schemes, and the plain language of Apprendi indicates that the case is not intended to apply to capital schemes. Importantly, in Weeks v. Delaware[, 761 A.2d 804 (Del. Supr.2000)], ... [t]he trial court ruled that Apprendi did not apply to Weeks' case. Weeks appealed and the trial court's ruling was affirmed. On November 16, 2000, just one day before the scheduled execution, the United States Supreme Court denied certiorari. The Supreme Court's denial of certiorari indicates that the Court meant what it said when it held that Apprendi was not intended to affect capital sentencing schemes.

786 So.2d at 536-37 (citations omitted) (emphasis supplied).
In light of Ring, we now know that much of what we said in Mills based on Apprendi is wrong. Ring has overruled Walton. In doing so, Ring has held that aggravating factors are not sentencing considerations but elements of the offense. The Court in Ring not only overruled its 1990 precedent in Walton but also receded from its 2000 statement in Apprendi that Apprendi was not intended to affect capital sentencing schemes. Indeed, Ring has now unequivocally told us that because aggravating factors operate as "`the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." 536 U.S. at ___, 122 S.Ct. at 2443.
In Ring, the Court specifically acknowledged that it was receding from precedent and reversing its prior Sixth Amendment jurisprudential course when it noted that "although `the doctrine of stare decisis is of fundamental importance to the rule of law,' [the Court's] precedents are not sacrosanct." Id. As Justice Scalia explained:
Since Walton, I have acquired new wisdom....
. . . .

[W]hether or not the States have been erroneously coerced into the adoption of "aggravating factors," wherever those factors exist they must be subject to the usual requirements of the common law, and to the requirement enshrined in our Constitution, in criminal cases: they must found by the jury beyond a reasonable doubt.
Id. at 2444-45 (Scalia, J., concurring).
I agree that the Supreme Court did not directly address Spaziano and Hildwin and thus, of course, this Court is bound by that precedent to the extent those cases govern the issues presented to us. However, I cannot take comfort in that precedent because it must be recognized that the Supreme Court has reversed itself 180 degrees from the position it held on the Sixth Amendment's application to capital trials when it decided those cases. Therefore, I believe we should acknowledge the *156 United States Supreme Court's evolution in Sixth Amendment jurisprudence from the time of Spaziano and Hildwin and recognize that those decisions, which came well before Apprendi and Ring, are of uncertain precedent as to the specific Sixth Amendment holding in Ring that aggravating factors in a death penalty statute must be found by a jury. The fact is that this evolution in United States Supreme Court Sixth Amendment jurisprudence casts a shadow of uncertainty over the hundreds of death sentences imposed over the past quarter of a century.[17] However, it is only the United States Supreme Court and not this Court that can definitively remove the uncertainty by deciding whether Florida's death penalty statute, which was praised by that Court in 1976 for complying with the Eighth Amendment, also complies with the Sixth Amendment in light of Ring.
ANSTEAD, C.J., concurs.
LEWIS, J., concurring in result only.
While I concur in the result reached by the majority today, I cannot agree with the majority's analysis and reasoning. I concur in result only for the reasons expressed in my concurring in result only opinion in Bottoson v. Moore, 833 So.2d 693 (Fla.2002).
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(9), Fla. Const.
[2] See King v. Florida, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002).
[3] See King v. Florida, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 843 (2002).
[4] See, e.g., Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
[5] In order to be complete, I believe it should be noted that certiorari was denied by the United States Supreme Court in most of the cases cited in Chief Justice Anstead's specially concurring opinion. See, e.g., Jones v. State, 569 So.2d 1234 (Fla.1990), cert. denied, 510 U.S. 836, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Davis v. State, 703 So.2d 1055 (Fla. 1997), cert. denied, 524 U.S. 930, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998); Sims v. State, 681 So.2d 1112 (Fla.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), appeal after remand, 510 So.2d 881 (Fla.1987), cert. denied, 485 U.S. 924, 108 S.Ct. 1094, 99 L.Ed.2d 256 (1988).
[6] Implicit in the opinion of Chief Justice Anstead and express in the opinions of Justice Pariente is the assumption that death is not the maximum penalty for a conviction of a capital felony in Florida. This Court, however, expressly held otherwise in Mills v. Moore, 786 So.2d 532, 538 (Fla.) ("[T]here can be no doubt that a person convicted of a capital felony faces a maximum possible penalty of death."), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001).
[7] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[8] The Apprendi issue had also been raised in other Florida capital cases that were stayed by the United States Supreme Court pending decisions on certiorari. In all of those cases, the Court denied certiorari and terminated the stays after the Court issued its decision in Ring v. Arizona. See Looney v. State, 803 So.2d 656, 675 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2678, 153 L.Ed.2d 850 (2002) (direct appeal decision); Hertz v. State, 803 So.2d 629, 648 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 846 (2002) (direct appeal decision); Card v. State, 803 So.2d 613, 628 n. 13 (Fla. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 845 (2002) (direct appeal decision); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2669, 153 L.Ed.2d 843 (2002) (denial of petition for writ of habeas corpus).
[9] This Court on direct appeal summarized the aggravating circumstances that had been established:

The trial court imposed a death sentence, finding five aggravating circumstances (committed while under sentence of imprisonment, previous conviction of violent felony, great risk of death to many persons, committed during burglary and sexual battery, and wicked, evil, atrocious, or cruel) and no mitigating factors.
King v. State, 514 So.2d 354, 356 (Fla.1987). The Court struck one aggravating circumstance (great risk of death to many persons) and approved the others. See id. at 360.
[10] See U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").
[11] See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses... and to have the assistance of counsel for his defence.").
[12] In Furman, five justices filed separate opinions in support of the ruling. Four justices dissented. See 408 U.S. at 240, 92 S.Ct. 2726.
[13] See, e.g., Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion) (striking a mandatory death sentence statute and holding that the "consideration of the character and record of the individual offender and the circumstances of the particular offense" is a "constitutionally indispensable part" of any capital sentencing scheme).
[14] Section 921.141, Florida Statutes (1971), provided:

A defendant found guilty by a jury of an offense punishable by death shall be sentenced to death unless the verdict includes a recommendation to mercy by a majority of the jury. When the verdict includes a recommendation to mercy by a majority of the jury, the court shall sentence the defendant to life imprisonment. A defendant found guilty by the court of an offense punishable by death on a plea of guilty or when a jury is waived shall be sentenced by the court to death or life imprisonment.
[15] Furman was issued June 29, 1972. See 408 U.S. at 238, 92 S.Ct. 2726. The Florida death statute requiring the finding of aggravating and mitigating factors became effective December 8, 1972. See State v. Dixon, 283 So.2d 1, 2 (Fla.1973).
[16] In Spaziano, Justice Stevens, joined by Justices Brennan and Marshall, opined that he would require jury sentencing under the Eighth Amendment. See 468 U.S. at 467-90, 104 S.Ct. 3154 (Stevens, J., concurring in part and dissenting in part). In a separate concurring opinion in Ring, Justice Breyer wrote that he agreed with Justice Stevens' opinion in Spaziano mandating jury sentencing. See Ring, 536 U.S. at ___ _ ___, 122 S.Ct. at 2446-48. Thus, at least two members of the current court may require jury sentencing under either the Eighth or the Sixth Amendment.
[17] In her dissent in Ring, Justice O'Connor recognized the instability that Ring would cause in our current death penalty sentencing system.

Not only was the decision in Apprendi unjustified in my view, but it has also had a severely destabilizing effect on our criminal justice system....
The decision today is only going to add to these already serious effects.... I fear that the prisoners on death row in Alabama, Delaware, Florida, and Indiana, which the Court identifies as having hybrid schemes in which the jury renders an advisory verdict but the judge makes the ultimate sentencing determination may also seize on today's decision to challenge their sentences.
Ring, 536 U.S. at ___ _ ___, 122 S.Ct. at 2449-50 (O'Connor, J., dissenting) (emphasis added) (citations omitted).