PARIENTE, J., dissenting.
For the reasons fully explained in my dissenting opinion in Grim v. State , No. SC17-1071, 244 So.3d 147, 2018 WL 1531121 (Fla. Mar. 29, 2018), because the jury did not hear any evidence of mitigation, I would conclude that this Court cannot rely on the jury's unanimous recommendations for death in Reynolds' case to determine that the Hurst[22] error is harmless beyond a reasonable doubt. Per curiam op. at 818. Because Hurst applies retroactively to Reynolds' sentences of death, which became final in 2007, the dispositive issue in this case is whether the Hurst error is harmless beyond a reasonable doubt. Hurst , 202 So.3d at 68-69 ; see Mosley v. State , 209 So.3d 1248, 1283-84 (Fla. 2016) ; Davis v. State , 207 So.3d 142, 174-75 (Fla. 2016). I also write to explain that Reynolds' Caldwell[23] claim, brought in light of Hurst , has merit because the jury instructions used in Reynolds' trial misled the jury as to its role in capital sentencing.
Whether the Hurst Error Is Harmless Beyond a Reasonable Doubt
After being convicted of two counts of first-degree murder, Reynolds "waived his right to present mitigating evidence." Reynolds v. State (Reynolds I ), 934 So.2d 1128, 1138 (Fla. 2006) ; see per curiam op. at 813. As the per curiam opinion explains, "[t]rial counsel swore in an affidavit that Reynolds waived mitigation, 'at least in part, because he did not think there was any chance of convincing six jurors to vote for life, and did not want to subject his sisters to the stress of testifying before a jury.' " Per curiam op. at 813. After hearing only evidence of aggravation, the penalty phase jury "returned unanimous recommendations of death for both first-degree murder convictions." Reynolds I , 934 So.2d at 1138.
After the penalty phase, the trial court held a Spencer[24] hearing, where "the sole testimony presented by the defense was the testimony of Reynolds himself. The State did not present any testimony, relying solely on the evidence and testimony admitted during the guilt and penalty phase trials as support for the aggravating factors." Reynolds I , 934 So.2d at 1138. Acknowledging Reynolds' mitigation waiver, the trial court determined that the *830 aggravating factors outweighed the mitigation and sentenced Reynolds to death for both first-degree murder convictions. Id.[25]
As to the mitigation that the jury did not hear before making its sentencing recommendations, the trial court found the following statutory mitigating circumstances for both murders: (1) Reynolds was gainfully employed; (2) Reynolds manifested appropriate courtroom behavior throughout trial; (3) Reynolds cooperated with law enforcement; and, (4) Reynolds had a difficult childhood. Id. at 1138-39 ; see per curiam op. at 813-14. In finding that Reynolds had a difficult childhood, the trial court noted that Reynolds "suffered from an upbringing marked by physical and psychological abuse"; his "father was a chronic alcoholic"; his "mother was chronically ill and was often hospitalized during [his] childhood"; Reynolds "was regularly hit, slapped and kicked by his drunken father, without warning"; his father would sometimes pour ice water on him in the middle of the night; Reynolds "regularly cared for his disabled, wheelchair-bound sister because his mother was unable to do so"; he "helped run household affairs around the home"; his mother died when he was 17 years old; his education was limited to the tenth grade; Reynolds began using alcohol at the age of 14; and, he "had essentially no adult supervision as a child." Second Am. Sentencing Order ("SO"), at 14-15, 26-27.
Pursuant to this Court's opinion in Muhammad v. State , 782 So.2d 343, 361-62 (Fla. 2001), the trial court in this case properly did "not give the recommendation[s] of the jury great weight." SO, at 16; see per curiam op. at 813-14. However, as I fully explained in my dissenting opinion in Grim , this does not overcome the Hurst error-the absence of a unanimous jury finding that the aggravation in Reynolds' case outweighed the mitigation. See Hurst , 202 So.3d at 44.
Significantly, Florida's pre- Hurst capital sentencing scheme, which required only seven jurors to recommend a sentence of death, guided Reynolds' calculation for waiving mitigation. Per curiam op. at 813. However, we now know that the United States and Florida Constitutions require all twelve jurors to vote for death. Hurst , 202 So.3d at 44. Therefore, Reynolds' calculation for waiving the right to present evidence of mitigation to the jury would be starkly different in proceedings guided by our post- Hurst capital sentencing statute-requiring only one juror to vote for life. See Kaczmar v. State , 228 So.3d 1, 16 (Fla. 2017) (Pariente, J., concurring in part and dissenting in part); see also § 921.141, Fla. Stat. (2017). Thus, in light of Reynolds' mitigation waiver, I cannot rely on the jury's uninformed, albeit unanimous, *831 recommendations for death to determine that the Hurst error is harmless beyond a reasonable doubt.
Next, I turn to address the per curiam opinion's discussion of Reynolds' claim to a right to relief under Hurst pursuant to the United States Supreme Court's decision in Caldwell v. Mississippi , 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) -what the per curiam opinion labels a "Hurst -induced Caldwell claim." Per curiam op. at 818-19; see concurring specially op. at 828-29 (Lawson, J.). As the per curiam opinion acknowledges, although this claim has been raised by numerous defendants, this Court has not "expressly addressed" the merits of this claim. Per curiam op. at 818 & n.8.
Caldwell Claim
This Court made clear in Hurst , which is now final, that, in addition to the constitutional requirements of the Sixth Amendment, "juror unanimity in any recommended verdict resulting in a death sentence is required under the Eighth Amendment." 202 So.3d at 59. Hurst also provided the constitutional requirements for imposing capital sentences in a manner that is not arbitrary and furthers the "narrowing function required by the Eighth Amendment." Id. at 60. Therefore, contrary to both the per curiam opinion and Justice Lawson's concurring specially opinion, I would conclude that Reynolds' Caldwell claim is valid. Cf. concurring specially op. at 828-29(Lawson, J.).
In Caldwell , the United States Supreme Court held that it is "constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere. " 472 U.S. at 328-29, 105 S.Ct. 2633 (emphasis added). As to the pre- Hurst jury instructions, I explained in Hamilton v. State , 43 Fla. L. Weekly S82 (Fla. Feb. 8, 2018):
Florida's pre- Hurst jury instructions referred to the advisory nature of the jury's recommendation over a dozen times. Further, the jury was only required to make a recommendation between life or death to the trial court, which then held the ultimate responsibility of making the requisite factual findings and determining the appropriate sentence. Thus, it was made abundantly clear to the jury that they were not responsible for rendering the final sentencing decision.
Id. at S84 (Pariente, J., dissenting) (citations omitted). Similar to how a majority of this Court denied the applicability of Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to Florida's capital sentencing scheme,[26] this Court consistently determined that Caldwell did not compromise the validity of Florida's jury instructions-even after Ring . Per curiam op. at 820-23.
However, if Florida's capital sentencing scheme was invalid from the point that the United States Supreme Court decided Ring , as the United States Supreme Court made clear in Hurst v. Florida , 136 S.Ct. at 622, and this Court's retroactivity analyses confirm,[27] it is difficult to understand how Florida's standard jury instructions, following an unconstitutional statute, did not also create constitutional error. See per curiam op. at 825 & n.15. Indeed, in a concurring in result only opinion in *832 Bottoson v. Moore , 833 So.2d 693 (Fla. 2002), Justice Lewis argued that, "in light of the dictates of Ring v. Arizona , it necessarily follows that Florida's standard penalty phase jury instructions may no longer be valid and are certainly subject to further analysis under" Caldwell . Bottoson , 833 So.2d at 731 (Lewis, J., concurring in result only). Justice Lewis explained:
[I]n light of the decision in Ring v. Arizona , it is necessary to reevaluate both the validity, and, if valid, the wording of [Florida's standard capital] jury instructions. The United States Supreme Court has defined the reach of Caldwell by stating that " Caldwell is relevant only to certain types of comment-those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." Darden v. Wainwright , 477 U.S. 168 [106 S.Ct. 2464, 91 L.Ed.2d 144] (1986).... Clearly, under Ring , the jury plays a vital role in the determination of a capital defendant's sentence through the determination of aggravating factors. However, under Florida's standard penalty phase jury instructions, the role of the jury is minimized, rather than emphasized, as is the necessary implication to be drawn from Ring.
Under Florida's standard penalty phase jury instructions, the jury is told, even before evidence is presented in the penalty phase, that its sentence is only advisory and the judge is the final decisionmaker. The words "advise" and "advisory" are used more than ten times in the instructions, while the members of the jury are only told once that they must find the aggravating factors beyond a reasonable doubt. The jury is also instructed several times that its sentence is simply a recommendation. By highlighting the jury's advisory role, and minimizing its duty under Ring to find the aggravating factors, Florida's standard penalty phase jury instructions must certainly be reevaluated under [Caldwell].
Just as the high Court stated in Caldwell , Florida's standard jury instructions "minimize the jury's sense of responsibility for determining the appropriateness of death." Caldwell , 472 U.S. at 341 [105 S.Ct. 2633]. Ring clearly requires that the jury play a vital role in determining the factors upon which the sentencing will depend, and Florida's jury instructions tend to diminish that role and could lead the jury members to believe they are less responsible for a death sentence than they actually are.
Id. at 732-33 (emphasis added) (citations omitted).
Of course, Hurst v. Florida held that Florida's existing capital sentencing law was unconstitutional under Ring , and the jury's proper role in capital sentencing is far more significant than the pre- Hurst statutory scheme and jury instructions provided. See Hurst v. Florida , 136 S.Ct. at 622. It follows that the jury instructions following the unconstitutional scheme, which minimized the jury's role in capital sentencing, were likewise deficient.
Not only was the jury in Reynolds' case apprised only of information that aggravated Reynolds' crime, the jury was repeatedly told that its sentencing recommendation between life and death was merely "advisory." In fact, in instructing the jury, the trial judge explicitly stated that "the final decision as to what punishment shall be imposed is the responsibility of the judge." Per curiam op. at 813. Therefore, because Hurst applies retroactively to Reynolds' sentence of death, I would conclude that Caldwell further supports the conclusion that the Hurst error in Reynolds' case is not harmless beyond a reasonable doubt.
*833 Conclusion
The greatest concern in capital sentencing is ensuring that the death penalty is not imposed arbitrarily or capriciously. For all the reasons explained above, I cannot conclude that the Hurst error in Reynolds' case is harmless beyond a reasonable doubt. Thus, I would grant Reynolds a new penalty phase.
Accordingly, I dissent.

Hurst v. State (Hurst ), 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017) ; see Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

Caldwell v. Mississippi , 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

Spencer v. State , 615 So.2d 688 (Fla. 1993).

The trial court found the following aggravating factors for the murder of Robin Razor and assigned them the noted weight: (1) Reynolds had previously been convicted of a another capital felony or a felony involving a threat of violence to the person (PVF) (great weight); (2) Reynolds committed the murder while he was engaged in or was an accomplice in the commission of or an attempt to commit a burglary of a dwelling (great weight); (3) the murder was committed for the purpose of avoiding a lawful arrest (great weight); and (4) the murder was committed in an especially heinous, atrocious, or cruel fashion (HAC) (great weight). Reynolds I , 934 So.2d at 1138.
For the murder of Christina Razor, the trial court the following five aggravating factors and assigned them the noted weight: (1) PVF (great weight); (2) Reynolds committed the murder while he was engaged in or was an accomplice in the commission of or an attempt to commit a burglary of a dwelling (great weight); (3) the murder was committed for the purpose of avoiding a lawful arrest (great weight); (4) HAC (great weight); and (5) the victim of the murder was a person less than 12 years of age (great weight). Id.

See Bottoson v. Moore , 833 So.2d 693, 695 (Fla. 2002) ; King v. Moore , 831 So.2d 143, 144-45 (Fla. 2002).

See Asay v. State (Asay V ), 210 So. 3d 1, 15-22 (Fla. 2016), cert. denied , --- U.S. ----, 138 S.Ct. 41, 198 L.Ed.2d 769 (2017) ; Mosley , 209 So.3d at 1276-83.