648 So.2d 95 (1994)
Alfred L. FENNIE, Appellant,
v.
STATE of Florida, Appellee.
No. 80923.
Supreme Court of Florida.
July 7, 1994.
Rehearing Denied August 25, 1994.
*96 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Alfred L. Fennie appeals his convictions for first-degree murder, armed kidnapping, and robbery with a firearm, and his sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm Fennie's convictions and sentences.
On September 8, 1991, two men reported observing the body of a woman lying face down along a road in the Ridge Manor area of Hernando County. Police officers responding to the report discovered the woman's hands had been bound behind her and she had been shot in the back of the head. Investigators later identified the victim as Mary Elaine Shearin.
Shearin's husband informed officers that his wife left their home early that morning driving a 1986 Cadillac. On September 9, 1991, Tampa police located Shearin's vehicle in the possession of two males who identified themselves as Ezell Foster and Ansell Rose. The officers impounded the vehicle and in a subsequent search uncovered certain items relating to Shearin's murder, including a .25 caliber pistol that fired the bullet recovered from Shearin's body and a piece of rope matching that used to tie Shearin's hands. Investigators also discovered evidence indicating that the victim, while still alive, had been placed in the trunk of the vehicle.
The two men in the vehicle were taken into custody and questioned. Police released Rose after verifying that he met the driver of the vehicle shortly before the arrest and was not involved in the murder. The driver, later identified as Alfred L. Fennie, gave several conflicting accounts of how he came to be in possession of Shearin's car. Fennie's statements to investigators differed each time with respect to the identity of a second suspect and his knowledge of that suspect's involvement in Shearin's death. Fennie finally identified the second suspect as Michael Frazier and admitted that he drove Shearin's car, at Frazier's behest, to the remote location where Frazier eventually shot Shearin.
Michael Frazier testified that Fennie was responsible for Shearin's kidnapping and murder. Frazier stated that Fennie waved Shearin down while she was driving, then forced her into the trunk of her car at gunpoint. Frazier stated that he rode with Fennie in Shearin's car for a period of time, during which Fennie attempted to use Shearin's credit cards to obtain money from several ATM machines. According to Frazier, Fennie also stopped to pick up several concrete blocks. Fennie and Frazier then proceeded to Frazier's home where they picked up Paula Colbert, who was both Frazier's cousin and Fennie's girlfriend. Fennie also collected some rope from Frazier's home before all three got back into Shearin's car. Fennie later told Frazier and Colbert that he planned to use the rope and concrete blocks to drown Shearin, but then decided to shoot her instead. Frazier further testified that after making several stops, Colbert drove the car to a wooded area where Frazier and Fennie removed Shearin from the trunk. Fennie then walked Shearin down a dirt road until the two were out of sight and shot her.
Frazier was charged with robbery, armed kidnapping and first-degree murder. He was convicted on all three counts and agreed to cooperate in Fennie's prosecution in exchange for the state's promise not to seek the death penalty.
Fennie was charged and convicted of first-degree murder, robbery with a firearm and armed kidnapping. The jury unanimously recommended death and the judge followed the recommendation, sentencing Fennie to death for the first-degree murder count and to consecutive life sentences for the remaining two counts. In support of the death penalty the trial judge found five aggravating factors: (1) the crime was committed while *97 engaged in the commission of a kidnapping;[1] (2) the crime was committed to avoid arrest;[2] (3) the crime was committed for financial gain;[3] (4) the crime was heinous, atrocious or cruel;[4] and (5) the crime was cold, calculated and premeditated.[5] The court also found a number of nonstatutory mitigating factors[6] but determined they were not of sufficient weight to preclude the death penalty.
Fennie appeals his convictions and sentence raising the following eight claims: (1) the trial court erred in denying defense counsel's requests for continuances before and during trial; (2) the trial court erred in denying Fennie's request to be present at Frazier's deposition; (3) the trial court erred in denying defense counsel's requests for expanded instructions on the heinous, atrocious, or cruel and the cold, calculated, and premeditated aggravating factors; (4) the heinous, atrocious or cruel aggravating factor is unconstitutionally vague; (5) the cold, calculated, and premeditated aggravating factor is unconstitutionally vague; (6) the trial court erred in denying defense counsel's penalty-phase motion for mistrial after the prosecutor's alleged comment on Fennie's failure to testify; (7) the trial court erred in finding the heinous, atrocious, or cruel, the cold, calculated, and premeditated, and the avoiding arrest aggravating factors; (8) Florida's death penalty scheme is unconstitutional. We find that only five of these claims merit discussion.
First, we address Fennie's claim that the trial court committed reversible error by denying defense counsel's motions for continuance. Defense counsel initially moved for a continuance after the prosecution informed him the evening before trial that Michael Frazier would testify against Fennie. The court denied the continuance because it concluded Frazier's testimony would not adversely affect the defense's ability to prepare for trial. The court also denied Fennie's mid-trial motion for a continuance made after the State introduced testimony regarding tests it conducted on Shearin's vehicle during trial. The tests were taken to determine where the victim's hand protruded from the trunk and whether the victim could hear a conversation conducted inside the vehicle. The court concluded that the issue to which these tests pertained was clearly on the record at the outset of the case and introduction of the testimony, therefore, could not adversely affect Fennie's defense.
Fennie claims his defense was placed at risk by the denial of these continuances. In particular, he asserts that his counsel was unable to fully investigate and prepare his defense and that his rights to adequate representation, due process and a fair trial were, thus, denied. The trial court disagreed and we will not disturb that ruling unless Fennie establishes that the denial constituted a palpable abuse of discretion. Bouie v. State, 559 So.2d 1113, 1114 (Fla. 1990).
An abuse of discretion is generally not found unless the court's ruling on the continuance results in undue prejudice to the defendant. See id. Fennie's defense could not have been prejudiced by the denial of his initial motion for continuance because, as the trial court indicated, he had always been aware of Frazier's involvement in the case. Frazier's trial testimony comported with all his previous statements to police and the statement he made at his own trial. Fennie had access to all these statements and, consequently, could not have been surprised when Frazier implicated him as the triggerman. Additionally, the court made Frazier available for deposition and assured the defense it would reconsider a motion to continue if defense *98 counsel encountered difficulty in obtaining witnesses or documents needed to impeach Frazier. As a result, the defense was able to effectively cross-examine Frazier. The trial court, therefore, did not abuse its discretion in denying a continuance.
We also find that the trial judge did not abuse his discretion in denying Fennie's request for a mid-trial continuance. Fennie requested this continuance after the State diligently informed him that it intended to introduce, through the testimony of Officer Gary Kimball, the results of certain tests it conducted as a result of defense's deposition of Frazier. Fennie claimed he needed time to secure his own expert to possibly refute the results of these tests. As stated previously, however, Fennie had access to all Frazier's prior statements and could not have been surprised by Frazier's deposition testimony regarding where the victim's hands protruded from the trunk. In addition, the defense was able to depose Kimball prior to his testimony and had an opportunity to conduct the same tests on the vehicle as those performed by the State. The trial court also conducted a Richardson[7] inquiry and determined that the introduction of this evidence would not prejudice Fennie in preparing his defense. We agree that a continuance was not needed to respond to the introduction of this evidence.
Although Fennie does not challenge the sufficiency of the evidence in this case, our review of the record indicates that Fennie's convictions are supported by competent substantial evidence. We, therefore, affirm the convictions and move on to consider Fennie's penalty-phase claims.
Fennie claims that the court erred in denying his request for expanded penalty-phase instructions on the heinous, atrocious, or cruel and the cold, calculated, and premeditated aggravating factors. He claims the instructions suffer the same constitutional infirmities as the instructions challenged in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and Hodges v. Florida, ___ U.S. ___, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992). In particular, he asserts that the instructions given were unconstitutionally vague in that they did not adequately limit the jury's discretion.
We find no merit to Fennie's claims regarding the heinous, atrocious, or cruel instruction or the aggravator itself, because the instruction provided mirrors the one that we upheld in Hall v. State, 614 So.2d 473 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). As we stated in Hall, "the instruction defines the term sufficiently to save both the instruction and the aggravator from vagueness challenges." Id. at 478. Moreover, the record in this case supports a finding that the heinous, atrocious or cruel aggravating factor was established beyond a reasonable doubt under any definition of the terms. Therefore, we also reject Fennie's claim that there was insufficient evidence to support a finding that the murder was heinous, atrocious, or cruel.
The cold, calculated, and premeditated instruction provided by the trial court merits further discussion in light of our decision in Jackson v. State, 648 So.2d 85 (Fla. 1994). In Jackson, we determined that the United States Supreme Court decisions in Espinosa and Hodges necessitated reconsideration of Florida's standard cold, calculated, and premeditated instruction. We held, and now reaffirm, that the cold, calculated and premeditated aggravator is constitutional. Jackson, 648 So.2d at 87. Our evaluation of the instruction, however, revealed that it left the sentencer without sufficient guidance for determining the presence or absence of the factor. Jackson, 648 So.2d at 89 (citing Espinosa, 112 S.Ct. at 2928). Accordingly, we held that the instruction was unconstitutionally vague and recommended the use of a more expansive instruction defining each element of the aggravator.[8]
*99 As was the case in Jackson, we are able to address the merits of this claim because Fennie requested an alternative instruction and pursued his objection here. See Jackson 648 So.2d at 89; James v. State, 615 So.2d 668, 669 & n. 3 (Fla. 1993). Despite Fennie's request for an alternative instruction, the trial judge instructed the jury as follows:
The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without pretense of moral or legal justification. "Cold" means without emotion or passion. "Calculation" means a careful plan or prearranged design.
This instruction fails to inform the jury that some form of "heightened" premeditation is necessary to find that the murder is cold, calculated, and premeditated.
While we agree that the trial court erred in failing to provide an expanded instruction, we conclude that such error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Harmlessness exists if the record supports a finding that the murder was, beyond a reasonable doubt, cold, calculated, and premeditated without any pretense of moral or legal justification under any definition of those terms. Henderson v. Singletary, 617 So.2d 313 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 1891, 123 L.Ed.2d 507 (1993). The record in this case reveals that all four of these elements would exist even if the proper instruction had been given.
First, the deliberate nature of Fennie's actions establish that the murder was not prompted by emotional panic or a fit of rage. Rather, Fennie's murder of Shearin was a protracted execution-style slaying which is by its very nature cold. Fennie's actions also establish the existence of a careful plan or prearranged design. After forcing Shearin into the trunk at gunpoint, Fennie made several stops to obtain the accoutrements necessary to drown her. Fennie also informed Frazier and Colbert that he planned to drown the victim but later told them he intended to shoot her instead. To carry out his plan and avoid detection, Fennie brought Shearin to a location where the gunshot would not be heard. The lengthy and drawn out nature of this crime clearly indicates Fennie carefully contemplated his actions prior to the fatal incident.
The lengthy nature of the crime also goes to the heightened premeditation necessary to establish this aggravating factor. Fennie kept the victim waiting for her ultimate fate while he contemplated various methods of execution. His actions, therefore, exude the deliberate ruthlessness necessary to raise his premeditation above that generally required for premeditated first-degree murder. His actions clearly do not demonstrate any pretense of legal or moral justification. See Banda v. State, 536 So.2d 221, 225 (Fla. 1988) (defining a pretense of moral or legal justification as any "claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide"), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989).
As all four elements of this aggravator are clearly present, we reject Fennie's claim that the cold, calculated, and premeditated aggravator does not apply in this case. We further find, that even if the cold, calculated, and premeditated aggravator was impermissibly considered, it would have been harmless error. The totality of the aggravating factors and the lack of significant mitigating circumstances conclusively demonstrate that death is the appropriate penalty in this case.
We also reject Fennie's claim that Florida's death penalty scheme is unconstitutional, see Thompson v. State, 619 So.2d 261 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993), and find Fennie's remaining claims to be without merit. *100 Accordingly, we affirm the convictions and death sentence imposed by the trial court.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] § 921.141(5)(d), Fla. Stat. (1991).
[2] § 921.141(5)(e), Fla. Stat. (1991).
[3] § 921.141(5)(f), Fla. Stat. (1991).
[4] § 921.141(5)(h), Fla. Stat. (1991).
[5] § 921.141(5)(i), Fla. Stat. (1991).
[6] In mitigation the court found: 1) Fennie came from a broken home; 2) Fennie grew up in the Tampa projects; 3) Fennie is the father of three children; 4) Fennie paid child support when he could; 5) Fennie has some talent as an artist; 6) Fennie spent time caring for his sister's children; 7) Fennie had counseled children about the perils of a life of crime; 8) Fennie was a model prisoner; 9) Fennie is a human being; and 10) Fennie was not known to be violent.
[7] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[8] In Jackson, we recommend that the following instruction be used until a new standard jury instruction is adopted:

The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. In order for you to consider this aggravating factor, you must find the murder was cold, calculated, premeditated, and that there was no pretense of moral or legal justification. "Cold" means the murder was a product of calm and cool reflection. "Calculated" means defendant had a careful plan or prearranged design to commit the murder. "Premeditated" means the defendant exhibited a higher degree of premeditation than that which is normally required in a premeditated murder. A "pretense of moral or legal justification" is any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.
648 So.2d at 89, n. 8.