855 So.2d 597 (2003)
Alfred Lewis FENNIE, Appellant,
v.
STATE of Florida, Appellee.
Alfred Lewis Fennie, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC01-2480, SC02-1180.
Supreme Court of Florida.
July 11, 2003.
Rehearing Denied September 18, 2003.
*599 Michael P. Reiter, Capital Collateral Regional Counsel-North, John M. Jackson, Assistant CCRC-N, Judy K. Walker, Staff Attorney, Office of the Capital Collateral Regional Counsel-North, Tallahassee, FL; and D. Todd Doss, Registry Counsel, Lake City, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Alfred Lewis Fennie appeals an order of the circuit court denying his motion for *600 postconviction relief under Florida Rule of Criminal Procedure 3.850. Fennie also petitions this Court for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const. For the reasons stated herein, we affirm the circuit court's denial of Fennie's rule 3.850 motion and deny his habeas petition.

BACKGROUND AND FACTS
On September 27, 1991, Alfred Lewis Fennie was indicted by a grand jury and charged with one count each of first-degree murder, robbery with a firearm, and armed kidnapping. Fennie pled not guilty and proceeded to trial in November 1992. In our decision affirming Fennie's conviction and sentence, this Court summarized the facts of the case. See Fennie v. State, 648 So.2d 95, 96 (Fla.1994). Our earlier opinion outlined the facts pertinent to this proceeding.
The victim in the instant case, Mary Elaine Shearin, was found dead beside a Hernando County road with her hands bound behind her back and a single gunshot wound to the back of her head. During the investigation, it was discovered that she had been placed in the trunk of her vehicle for a period of time prior to her death. A man, subsequently identified as Fennie, was found in possession of the victim's car, the murder weapon, and a piece of rope matching that used to bind the victim's hands. Upon questioning by law enforcement, Fennie gave several conflicting accounts regarding why he was in possession of the victim's car, and with respect to the identity of a second suspect in the murder. Fennie eventually identified the second suspect as Michael Frazier and admitted that he had driven the victim's car, at Frazier's behest, to the remote location where, according to Fennie, Frazier shot Shearin.
Frazier, in turn, relayed to police and eventually testified at trial that Fennie was responsible for Shearin's kidnapping and murder. According to Frazier, it was Fennie who waved the victim down on the street and then forced her into the trunk of her car at gunpoint. Frazier testified that he rode with Fennie as Fennie attempted to use Shearin's credit cards and to obtain money from several ATM machines. Frazier also testified that Fennie stopped to procure concrete blocks and rope prior to picking up Pamela Colbert, who was both Frazier's cousin and Fennie's girlfriend. Fennie told Frazier and Colbert that he planned to use the rope and concrete blocks to drown Shearin, but ultimately decided to shoot her. According to Frazier, Colbert drove the victim's car to a wooded area where Frazier and Fennie removed Shearin from the trunk. Fennie then walked Shearin down a dirt road until the two were out of sight and he then shot her. Frazier was charged with robbery with a firearm, armed kidnapping, and first-degree murder. He was convicted on all three counts and agreed to cooperate in Fennie's prosecution in exchange for the State's promise not to seek the death penalty.
Fennie was charged with and convicted on three identical counts. A day later, the penalty phase of Fennie's trial commenced, with the jury returning a unanimous recommendation for the death penalty. See Fennie, 648 So.2d at 96. The trial judge accepted and followed the sentencing recommendation. See id. In support of the imposition of the death penalty, the trial judge found the following five aggravating factors: (1) the crime was committed while Fennie was engaged in the commission of a kidnapping; (2) the crime was committed to avoid arrest; (3) the crime was committed for financial gain; (4) the crime was heinous, atrocious or cruel (HAC); and (5) the crime was cold, calculated, and premeditated *601 (CCP). See id. at 96-97. The court also found ten nonstatutory mitigators, but determined that the aggravating factors far outweighed the mitigating factors. See id. at 97. In mitigation, the court found that Fennie (i) came from a broken home; (ii) grew up in the Tampa housing projects; (iii) is the father of three children; (iv) paid child support when he could; (v) has some talent as an artist; (vi) spent time caring for his sister's children; (vii) had counseled children about the perils of a life of crime; (viii) was a model prisoner; (ix) is a human being; and (x) was not known to be violent. See id. at 97 n. 6.
Fennie timely filed a motion for postconviction relief. Hearings were held pursuant to Huff v. State, 622 So.2d 982 (Fla. 1993), after which the lower court ordered an evidentiary hearing on five claims. The evidentiary hearing was conducted on several days in June 2001, and on October 10, 2001, the trial court entered an order denying relief on all claims. In his appeal of the trial court's decision, Fennie alleges six claims, most with several subclaims.[1] Fennie's appeal is accompanied by a petition for writ of habeas corpus in which Fennie advances three claims for relief.[2] We address certain of Fennie's claims herein, and deny the remainder as meritless.

3.850 APPEAL

Ineffective Assistance of Counsel during Voir Dire
In the first issue meriting discussion,[3] Fennie alleges that guilt phase trial counsel was functionally and constructively absent during voir dire in Fennie's case because he failed to effectively question jurors on the issues of race and racial tensions in the community in which the trial was held, request individual voir dire to ensure effective questioning on these issues, and seek a change of venue. According *602 to Fennie, a thorough voir dire examination was necessary, given the interracial nature of the crime, the State's allegation that Fennie raped the victim prior to her death, and the history of racial tension in the trial community of Brooksville, Florida. Fennie asserts that these tensions were exacerbated by the beating death of a white teenager by a group of black youths less than two years prior to Fennie's trial (hereinafter, the "Smith case"). Based on counsel's alleged inaction, Fennie urges this Court to apply the presumption of prejudice standard articulated by the United States Supreme Court in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
In Cronic, the "Supreme Court created an exception to the Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], standard for ineffective assistance of counsel, and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed." Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir.1991). These circumstances include those where the accused is denied the presence of counsel at a critical stage in the proceeding, where counsel entirely fails to subject the State's case to a meaningful adversarial testing, and where the circumstances are such that even competent counsel could not render assistance. See Bell v. Cone, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Fennie attempts to invoke the first prong of the Cronic framework, arguing that prejudice to his defense should be presumed because trial counsel's failures during jury selection rendered him constructively and functionally absent.
While it is well settled that an egregiously deficient performance by counsel during trial can amount to constructive denial of counsel under Cronic,[4] the facts of the instant case do not support application of the Cronic presumption of prejudice standard. Fennie's trial counsel conducted a vigorous voir dire, the transcript for which covered 900 pages. During the questioning of two of the four panels of prospective jurors, counsel posed a series of race-related questions to several individuals. The jury ultimately empaneled to decide Fennie's case included two African Americans; both alternate jurors were also African American. Clearly, Fennie's counsel did not stand mute during the jury selection process or otherwise completely fail to test the impartiality of jurors on important matters. See White v. Luebbers, 307 F.3d 722, 729 (8th Cir.2002) (refusing to apply the Cronic standard where trial counsel deliberately failed to ask potential jurors questions relating to the death penalty). Thus, this is not a case in which counsel's conduct fits within the "narrow spectrum of cases [under Cronic] where the defendant was completely denied effective assistance of counsel." Nixon, 758 So.2d at 622.
The lower court properly analyzed Fennie's claim of ineffective assistance of *603 counsel under the two-part Strickland test, and determined that Fennie could demonstrate neither deficient performance during voir dire nor prejudicial impact. In reviewing claims of ineffective assistance of counsel, this Court will defer to the lower court's findings of fact and review as questions of mixed law and fact whether counsel's performance was ineffective, and whether the defendant was prejudiced by that ineffective performance. See Ragsdale v. State, 798 So.2d 713, 715 (Fla.2001). We conclude that the trial court's denial of Fennie's ineffective assistance of counsel claim is fully supported by the record, consistent with the evidence and consistent with controlling caselaw.
The record reveals that trial counsel made a strategic decision not to ask each prospective juror specific race-based questions. Trial counsel testified during the postconviction proceeding that he does not automatically ask race-related questions in interracial crimes, and that his decision to do so turns on the composition of the prospective panels and the facts of the case involved. Counsel further asserted that he did not regard Fennie's case as racially motivated, and that he wanted to avoid offending or alienating potential jurors by asking each of them questions related to race. In trial counsel's experience, the risk of jury alienation would not have been cured through the use of individual voir dire. Counsel confirmed that he went over each juror strike with Fennie and consulted him before the jury was empaneled. Counsel further testified that having successfully selected a jury, there was no basis on which to request a change of venue under controlling caselaw. See Henyard v. State, 689 So.2d 239, 245 (Fla. 1996). The record supports the reasonableness of counsel's decision to avoid the creation of racial conflict during the voir dire process, and belies any basis for an ineffective assistance of counsel claim. See Maharaj v. State, 778 So.2d 944, 959 (Fla. 2000).
The reasonableness of counsel's course of action is further underscored by his experience. Alan Fanter had practiced in Brooksville for eleven years at the time of Fennie's trial, and had previously successfully litigated interracial crimes. Indeed, Fanter represented John Smith, the only black youth to be brought to trial for the 1990 beating death of a white teenager, and succeeded in obtaining a third-degree murder conviction from a Brooksville jury in the face of intense publicity and an all white jury pool. In response to questions from the court during the postconviction proceeding, Fanter confirmed that he had represented the defendant in the Smith case in accordance with the knowledge and experience he had gained in prior cases and applied that experience in representing Fennie in the present case. Far from constituting ineffective assistance, counsel's actions in the instant case demonstrate a level of competency beyond that which exists in many cases that involve sensitive matters. We therefore deny Fennie's ineffective assistance of counsel claim as to this aspect of the proceedings.

Ineffective Assistance of Counsel in the Penalty Phase
Fennie advances a second ineffective assistance of counsel claim comprised of three allegations pertaining to counsel's performance during the penalty phase of the trial. First, Fennie contends that his defense was prejudiced by penalty phase counsel's deficient preparation of mitigation witnesses, especially his mother and sister. Fennie next asserts that trial counsel was deficient in failing to call witnesses who would have cast doubt on Fennie's identity as the triggerman. Finally, Fennie alleges that he was prejudiced by counsel's failure to secure expert testimony *604 regarding his dependent and compliant personality traits.
To establish ineffective assistance of counsel, a defendant first must show that counsel's performance was deficient and, second, that the deficiency prejudiced the defense. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. As set forth in greater detail below, Fennie cannot demonstrate that his defense was prejudiced by any of the identified conduct. Our confidence in the outcome is not undermined when all of the material is considered. Having resolved that Fennie is unable to demonstrate one of the necessary elements of the Strickland test, we need not delve into whether counsel's performance was deficient. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").
As evidence of counsel's deficient preparation of mitigation witnesses, Fennie highlights the fact that his sister, Kathy Reed, offered more compelling mitigation evidence during the postconviction proceeding than she presented during the original trial.[5] Fennie also relies on his mother's trial testimony, which he claims mistakenly informed the jury that the family moved to the housing projects when Fennie was in his late teens, mischaracterized life in the projects as acceptable if one kept to oneself, and unexpectedly disclosed damaging information including that Fennie was previously incarcerated, had a gambling habit, worked infrequently, and accepted money from women. Fennie also claims that he was prejudiced by counsel's failure to perpetuate the testimony of his other sister, Deborah Fennie, who was recovering from surgery at the time of trial.
Based on the record in this case, Fennie cannot demonstrate that he was prejudiced by counsel's purportedly deficient preparation of mitigation witnesses. As the lower court found, Fennie's penalty phase presentation included most of the testimony introduced in postconviction. Indeed, after conclusion of the original proceedings, the court specifically found that Fennie was from a broken home, grew up in Tampa's housing projects,[6] and was not known to be violent all as mitigating factors. Thus, much of the testimony Fennie introduced in the postconviction proceeding would have been redundant or cumulative of testimony presented at trial. See Provenzano v. Dugger, 561 So.2d 541, 546 (Fla.1990).
Moreover, Fennie fails to establish that certain mitigating evidence introduced for the first time during the postconviction proceeding, most notably that Fennie was physically abused and went without parental supervision for long periods of time, would have overwhelmed the substantial aggravation present in this case, nor is our confidence in the outcome undermined. We reiterate that the presentation of additional *605 nonstatutory mitigating evidence in the postconviction proceeding does not conclusively substantiate ineffective assistance, and that this Court must also consider the nature of the aggravating and mitigating evidence presented at trial. See Asay v. State, 769 So.2d 974, 988 (Fla. 2000). In this case, the trial judge found a significant amount of aggravation, including commission of a crime to avoid lawful arrest, CCP, and HAC, and little mitigation. See Fennie, 648 So.2d at 96-97. Given those findings, it is highly unlikely that the alleged absence of the evidence pertaining to an unpredictable and abusive upbringing would have swayed six jurors to change their recommendation from death to life imprisonment. See Asay, 769 So.2d at 988; Breedlove v. State, 692 So.2d 874, 878 (Fla.1997). The burden to demonstrate prejudice has not been carried and the material presented is not sufficient to undermine our confidence in the outcome of this case.
Fennie next asserts that his defense was prejudiced by counsel's failure to call codefendant Pamela Colbert as a witness during the penalty phase.[7] At her own trial, which preceded Fennie's, Colbert testified that both Fennie and codefendant Michael Frazier accompanied the victim down the dirt road where Shearin was subsequently murdered. Colbert's trial testimony corroborated the first statement she gave to police regarding the incident, but contradicted a second statement in which she asserted that Frazier accompanied Fennie and the victim part of the way down the road, but returned to the car prior to the shooting. According to Fennie, Colbert's testimony would have planted a seed of doubt about his guilt in the minds of the penalty phase jurors that would have been reasonably likely to lead to a recommendation of life imprisonment.
In rejecting Fennie's claim of ineffective assistance of counsel on this point, the lower court determined that counsel had made a reasonable strategic decision not to present Colbert as a witness, whom the trial judge characterized as an "unpredictable witness." The court below found that Fennie's counsel was in constant contact with Colbert's defense counsel and had been warned by her counsel that Colbert's testimony would inculpate his client. The record conclusively supports the trial court's determination.[8]
We agree with the trial court that counsel cannot be faulted for deciding against calling a witness who might have condemned Fennie with her testimony as related by the witness's counsel. See Sweet v. State, 810 So.2d 854, 861 (Fla. 2002) (determining that the decision not to call a witness who had made an out-of-court identification of the defendant did not constitute ineffective assistance of counsel). Fennie most certainly would have alleged ineffective assistance of counsel had trial counsel gambled and *606 presented Colbert as a witness only to have her inculpate Fennie. Thus, the instant case provides a crystalline example of why tactical decisions regarding whether or not a particular witness is presented are "subject to collateral attack only in rare circumstances when the decision is so irresponsible as to constitute ineffective assistance of counsel." Jackson v. State, 711 So.2d 1371, 1372 (Fla. 4th DCA 1998), discussed with approval in Ford v. State, 825 So.2d 358, 360-61 (Fla.2002).
Finally, Fennie claims that his defense was prejudiced by penalty phase counsel's failure to bring forth evidence regarding Fennie's compliant, easily dominated personality and related susceptibility to duress. Fennie bolsters his allegation with the postconviction testimony of psychologist Dr. Jethro Toomer. Dr. Toomer opined that Fennie demonstrated multiple personality deficits such as insecurity, the need for acceptance, and high dependency, which rendered him susceptible to manipulation and duress.
Fennie cannot demonstrate that his defense was prejudiced by the failure of trial counsel to introduce evidence pertaining to his generally compliant personality. In making this determination, we are guided by the principle that every effort must be made to eliminate the "distorting effects of hindsight" and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Prior to trial, counsel had received a report from Dr. Ronald Peal, a psychologist engaged to assess Fennie's competency and potential mitigation. Dr. Peal concluded that Fennie was not a violent, impulsive individual, but reported no findings of mental mitigating evidence. Ultimately, trial counsel decided not to call Dr. Peal as a witness out of concern that the jury would be apprised of inconsistencies between the statements Fennie made during the course of the evaluation and those he provided to law enforcement.[9]
The fact that postconviction counsel is able to secure more expansive mental health mitigation than trial counsel does not, in and of itself, render trial counsel's performance ineffective. See Provenzano, 561 So.2d at 546 ("The mere fact that Provenzano has now secured an expert who might have offered more favorable testimony is an insufficient basis for relief."). We agree with the trial court's conclusion that it is "highly speculative and conjectural" that the introduction of Dr. Toomer's testimony would have impacted the outcome of the case. Counsel successfully conveyed Fennie's nonviolent personality through lay witnesses, and introduced some evidence regarding Fennie's lack of future dangerousness through the testimony of correctional officers. Fennie has shown no prejudice where there is no mental mitigating evidence of the nature that would have either seriously impacted the mitigation found or placed the grievous aggravating factors in a different posture. See Asay, 769 So.2d at 988; Breedlove, 692 So.2d at 878.

HABEAS CORPUS

Insufficiency of the Trial Court's Sentencing Order
In the first of two claims we address from Fennie's habeas corpus petition,[10] *607 it is contended that the trial court violated his constitutional rights by failing to independently weigh aggravating and mitigating circumstances. Fennie further alleges that appellate counsel was ineffective for failing to assert this issue on direct appeal. In support of his contention, Fennie directs attention to several purported violations of the requirement that aggravating and mitigating circumstances be independently evaluated and weighed. We address only the issue pertaining to the trial judge's failure to assign individual weights to each of the ten nonstatutory mitigators which were determined to be established, and deny the remainder of the claim as meritless.[11]
As a threshold matter, Fennie's substantive claim, that the trial court erred in failing to independently weigh the aggravating and mitigating circumstances, is procedurally barred, as Fennie could have and should have raised the issue on direct appeal. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995); Roberts v. State, 568 So.2d 1255, 1258 (Fla.1990). To succeed on the ineffective assistance of appellate counsel portion of the claim, Fennie must establish that counsel's failure to raise the claim on appeal is of "such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Floyd v. State, 808 So.2d 175, 183 (Fla.2002) (quoting Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986)). The failure to raise a meritless issue does not constitute ineffective assistance of counsel. See Valle v. Moore, 837 So.2d 905, 908 (Fla.2002); Chandler v. Dugger, 634 So.2d 1066, 1068 (Fla.1994). In fact, appellate counsel is not required to raise every conceivable nonfrivolous issue. See Valle, 837 So.2d at 908. We conclude that Fennie cannot make the required showing of prejudice on this claim.
In Campbell v. State, 571 So.2d 415 (Fla. 1990),[12] this Court set forth guidelines for circuit courts to follow in weighing aggravating and mitigating factors. In the words of the Campbell Court:
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, *608 it is truly of a mitigating nature.... The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance.
Campbell, 571 So.2d at 419-20 (footnote omitted). Arguably, the assignment of individualized weights to aggravating and mitigating factors is not expressly and absolutely required by Campbell. Subsequent decisions from this Court have, however, interpreted Campbell as requiring individualized weighing of aggravating and mitigating factors. See Hurst v. State, 819 So.2d 689, 697 (Fla.2002) (citing Campbell for the proposition that written sentencing orders must "carefully evaluate each mitigating circumstance offered by the defendant, decide if it has been established, and assign it a proper weight"); Woodel v. State, 804 So.2d 316, 327 (Fla.2001) (deeming a sentencing order insufficient due, in part, to the trial court's failure to assign individualized weights to aggravators and mitigators).
Although we believe the state of Florida law on this point to be clear, we again reiterate that Campbell, as subsequently interpreted by this Court, requires a trial judge to assign a weight to each aggravating factor and also to each mitigating factor that he or she deems has been established. This requirement is in addition to the other procedural dictates articulated in Campbell. Thus, pursuant to Campbell, a trial judge presiding over a capital case must: (1) expressly evaluate in his or her written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature; (2) assign a weight to each aggravating factor and mitigating factor properly established; (3) weigh the established aggravating circumstances against the established mitigating circumstances; and (4) provide a detailed explanation of the result of the weighing process.
The requirement to assign a weight to each aggravator and mitigator found both stems from, and advances, the constitutional requirement for individualized sentencing that compelled this Court to provide the Campbell guidelines in the first instance. See Campbell, 571 So.2d at 420 ("Hopefully, use of these guidelines will promote the uniform application of mitigating circumstances in reaching the individualized decision required by law."). The process, as clarified herein, will engender an analytical discipline at the trial court level that will, in turn, enhance the trial court's consideration of the unique circumstances surrounding each capital case and each individual defendant. This process will also facilitate a meaningful review of capital cases by ensuring that sentencing orders accurately and fully reflect the trial court's sentencing determination. See Jackson v. State, 704 So.2d 500, 507 (Fla.1997). The importance of a complete understanding of the trial court's reasoning and determination cannot be understated, as it is the responsibility of this Court to conduct a proportionality review of each capital case for the purpose of fostering uniformity in our death penalty jurisprudence. See Tillman v. State, 591 So.2d 167, 169 (Fla.1991).
The sentencing order in the instant case failed to assign weights to the aggravating and mitigating circumstances on an individualized basis, and thus did not strictly conform with the requirements of Campbell as subsequently interpreted by this Court. However, we determine that the nonconformity in the instant case does not constitute fundamental error because the sentencing order was otherwise thorough and detailed, addressed all of the *609 matters claimed in mitigation and aggravation, and contained a proper weighing analysis even though individual weights were not assigned.[13]See Griffin v. State, 820 So.2d 906, 914 n. 10 (Fla.2002). This Court was able to conduct a meaningful review of Fennie's case on direct appeal, reaching the ultimate conclusion that "[t]he totality of the aggravating factors and lack of significant mitigating circumstances conclusively demonstrate that death is the appropriate penalty in this case." Fennie, 648 So.2d at 99. On this basis, we conclude that Fennie was not prejudiced by appellate counsel's failure to raise the insufficiency of the sentencing order on appeal.

Prosecutorial Misconduct
The second habeas claim that we address involves Fennie's contention that inflammatory statements by the prosecutor rendered his death sentence unconstitutional, and that appellate counsel was ineffective for failing to present the issue on appeal. We address only those aspects of this composite claim pertaining to the State's purportedly improper advancement of an uncharged rape as nonstatutory aggravation and alleged Golden Rule arguments, and deny the balance of the claim as meritless.[14]
Fennie concedes that trial counsel failed to object to all but one of the comments challenged here, but attempts to circumvent the lack of proper preservation by arguing that the inflammatory comments, taken together, rise to the level of fundamental error and were thus cognizable on appeal. See Roberts v. State, 568 So.2d 1255, 1261 (Fla.1990) (determining that appellate counsel cannot be deemed ineffective for failing to raise claims that are not preserved for appeal by a contemporaneous objection at trial except where the claims rise to the level of fundamental error). To constitute fundamental error, "improper comments made in the closing arguments of a penalty phase must be so prejudicial as to taint the jury's recommended sentence." Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999). Fennie contends that this standard is satisfied in the instant case where the State argued an uncharged rape allegation as nonstatutory aggravation. Fennie further alleges that the State inappropriately characterized the victim as pleading for her life and the opportunity to see her children, and incited the jury to "send a message" to, or "do their duty" for, the community by sentencing Fennie to death. We conclude that Fennie cannot demonstrate that the unanimous death recommendation was improperly tainted by the allegedly improper comments.
With regard to the allegations leveled by the State that Fennie raped the victim prior to her death, Fennie has not and cannot show that the State argued an uncharged rape as a nonstatutory aggravator, or that the jury considered it as such. *610 The State formed a basis for reference to a sexual encounter through the testimony of two witnesses and narrowly focused its inquiries regarding the allegation to test the veracity of Fennie's contention that he had consensual sexual relations with the victim prior to her death. During the penalty phase, the State referenced the sexual conduct in closing arguments as part of the larger factual context of the criminal episode, and as factual predicate for the aggravating factors of commission of a crime to avoid arrest, HAC, and CCP. Given the factual predicate established for the statements and the relevance of the conduct to the statutory aggravators, Fennie cannot sustain the argument that a rape allegation was advanced as nonstatutory aggravation.[15] Moreover, Fennie cannot demonstrate prejudice stemming from the jury's consideration of the sexual contact in the context of the statutory aggravators as the State introduced ample evidence in support of the aggravators found by the trial judge.
In a similar manner, we resolve that Fennie has failed to demonstrate that the prosecutor's purportedly improper Golden Rule arguments tainted the jury's sentencing recommendation. The remarks that Fennie claims inappropriately characterized the victim as pleading for her life are not of the same nature or egregiousness as those previously deemed improper by this Court. Pertinent to our analysis is the fact that the prosecutor's comments regarding the victim's statements at the time of her death were based on Michael Frazier's testimony regarding what he had actually witnessed and heard, as opposed to the prosecutor's speculation or conjecture. Cf. Urbin v. State, 714 So.2d 411, 421 (Fla.1998) (determining that the prosecutor had engaged in a "subtle `golden rule' argument" by creating an imaginary script demonstrating that the victim was shot while pleading for his life). We also recognize that in delivering his closing argument, the prosecution did not invite the jury to imagine themselves in the place of the victim, as this Court has previously deemed improper. See Garron v. State, 528 So.2d 353, 358-59 (Fla.1988); Bertolotti v. State, 476 So.2d 130, 133 n. 3 (Fla. 1985). The comments concerning the evidence were not hypothetical nor were they improper.
Similarly, we determine that Fennie has failed to establish that the prosecutor's comments run afoul of caselaw precluding the State from encouraging jurors to "do their duty" for the community or "send a message" through their sentencing decision. We have rejected arguments pertaining to comments similar to those which Fennie characterizes as objectionable. See Cox v. State, 819 So.2d 705, 718 (Fla.2002) (determining that prosecutor's grandiose statement that he represented the lawabiding people of the community and state was not improper). Importantly, there is no evidence that the prosecutor expressly exhorted the jury to return a verdict of death, or equated the juror's duty with a particular sentence. Cf. Urbin, 714 So.2d at 421 (deeming improper argument that "you may be tempted to take the easy way out, to not weigh the aggravating circumstances and the mitigating circumstances and not want to fully carry out your responsibility and just vote for life"); Garron, 528 So.2d at 359 (determining that it was improper for the prosecutor to admonish the jury that it was their "sworn duty as you came in and became jurors to come *611 back with a determination that the defendant should die for his actions"). The prosecutor's comments in the instant case are distinguishable from those that this Court has deemed improper, and in context do not rise to the level of fundamental error.

Conclusion
For the foregoing reasons, we affirm the trial court's denial of Fennie's rule 3.850 motion and deny Fennie's petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
I concur in the majority opinion in all respects except for its discussion of the Ring issue. For the reasons I expressed in my opinion in Duest v. State, 855 So.2d 33 (Fla.2003), I cannot agree with the majority's reasoning for rejecting the Ring claim.[16] The majority cites the plurality opinions in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (2002), as providing a basis for rejecting this claim despite the lack of a majority opinion in either case.
Initially, I find it telling that the majority feels compelled, in this postconviction case, to specifically recognize that the jury's advisory sentence in this case was unanimous and that one of the aggravating circumstances was inherent in the jury's guilt phase conviction. This recognition suggests, of course, that in cases where there is no unanimous recommendation or "exempt" aggravating circumstance, a postconviction argument based on Ring might be meritorious.
However, even if the majority is correct in considering one of the aggravating circumstances to be inherent in the jury's guilt phase verdict, we cannot ignore the fact that the judge alone found four other serious aggravating circumstances, including the presence of the "heinous, atrocious, or cruel" and the "cold, calculated, and premeditated" aggravating circumstances, which are two of the most serious set out in Florida's death sentencing scheme. Larkins v. State, 739 So.2d 90, 95 (Fla. 1999). Ring, of course, prohibits death sentences predicated upon factual findings made by the judge alone.
NOTES
[1] Fennie contends that (1) trial counsel rendered ineffective assistance by failing to protect Fennie's right to be tried by a fair and impartial jury; (2) penalty phase counsel rendered ineffective assistance of counsel by failing to present evidence in mitigation; (3) the lower court erred in denying Fennie's request to interview jurors; (4) guilt phase counsel rendered ineffective assistance by failing to impeach key witnesses and to call certain defense witnesses; (5) the lower court erred in denying Fennie an evidentiary hearing on two of his postconviction claims; and (6) the lower court erred in denying Fennie relief on the claim that he was denied the right to testify in his own defense.
[2] Fennie argues that (i) the trial court violated Fennie's constitutional rights by failing to independently weigh aggravating and mitigating circumstances and appellate counsel was ineffective for failing to raise the issue on direct appeal; (ii) inflammatory statements by the prosecutor rendered Fennie's death sentence unconstitutional and appellate counsel was ineffective for failing to raise the issue on appeal; and (iii) Florida's death penalty statute is unconstitutional.
[3] We address the balance of the claims raised in Fennie's 3.850 appeal as follows. Fennie's claim (3), that the trial court erred in denying postconviction counsel's request to interview jurors, is meritless. The record demonstrates that counsel failed to show prima facie evidence of juror misconduct; and therefore, the trial court appropriately denied the request. See Cave v. State, 476 So.2d 180, 187 (Fla. 1985). We deny claim (4) as Fennie has failed to establish that guilt phase counsel's performance was deficient, or, assuming deficiency, that his defense was prejudiced as required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With regard to claim (5), we conclude that the trial court appropriately summarily denied two of Fennie's postconviction claims as both were either legally insufficient or clearly refuted by the record. See Gaskin v. State, 737 So.2d 509, 516 (Fla. 1999). Finally, we determine that the record conclusively contravenes claim (6), that Fennie was denied the right to testify in his own defense.
[4] See Nixon v. Singletary, 758 So.2d 618, 623 (Fla.2000) (determining that absent a client's consent, an attorney's admission of his client's guilt would amount to per se ineffectiveness); see also Rickman v. Bell, 131 F.3d 1150, 1157 (6th Cir.1997) (applying Cronic where defense counsel totally failed to advocate his client's cause and expressed contempt for his client in front of the jury); Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985) (noting that "a presumption of prejudice would be proper where counsel's representation was so deficient as to amount in every respect to no representation at all"); Reyes-Vasquez v. United States, 865 F.Supp. 1539, 1546 (S.D.Fla.1994) (recognizing that counsel's tactical decision to stand silent during defendant's trial may constitute ineffective assistance of counsel under the Cronic standard).
[5] This information included the fact that, as children, she and her siblings were left alone for long periods when their mother was working and outside the home gambling, forbidden from venturing or even looking outside during these times, and physically abused. Ms. Reed also testified that the children occasionally accompanied their mother on gambling trips where they witnessed violent altercations, and that Fennie was terrorized by bullies in the housing projects in which the family lived.
[6] This finding renders irrelevant the discrepancy between the testimony of Fennie's mother and sisters regarding when the family moved into the Tampa housing projects. Contrary to their mother's testimony, Kathy Reed and Deborah Fennie asserted that the family moved to the housing projects when Fennie was approximately ten years old.
[7] Fennie also claims that counsel was ineffective for failing to call as witnesses during the penalty phase Dwayne Jones, a man who committed a previous armed robbery with Frazier, and Dr. Kenneth Martin, a dentist who had been engaged by the State to opine as to the origin of the bite marks discovered on Michael Frazier's hand. In a separate claim, Fennie contends that guilt phase counsel was ineffective for failing to call these witnesses during the guilt phase. We find no merit in Fennie's contentions pertaining to counsel's decision not to call these witnesses during either phase of trial, and will not address Fennie's assertions in further detail herein.
[8] The record included the transcript of a recorded conversation between trial counsel and Fennie in which they discussed the witnesses that would be called during the defense case. The text of the recorded conversation shows that Colbert had been asked to testify and indicated that she would give damaging testimony if called to the stand.
[9] Dr. Peal reported that the rendition of events relayed to him by Fennie contradicted Fennie's police statements, and that such inconsistencies placed Fennie's general truthfulness in doubt. Given the potential damage to the credibility of the version of events propounded by the defense, counsel's decision not to call Dr. Peal amounted to a reasoned, strategic decision which is not susceptible to attack as ineffective assistance of counsel. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (no ineffective assistance of counsel in deciding against introducing a potentially damaging mental health evaluation).
[10] We deny Fennie's third and final habeas claim in which he asserts that Florida's death penalty statute is unconstitutional because it fails to require aggravators to be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. This Court addressed a similar contention in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002) and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and denied relief. We find that Fennie is likewise not entitled to relief on this issue. Additionally, we note that the jury in the instant case returned a unanimous recommendation in favor of the death penalty. Moreover, one of the aggravators in the instant case was that the murder was committed while Fennie was engaged in the commission of a kidnapping, which was charged by indictment and found unanimously by the jury.
[11] We determine that the record refutes Fennie's allegation that the trial court (1) inappropriately copied verbatim the State's sentencing order, (2) failed to weigh the aggravators against the mitigators, (3) relied on nonrecord evidence in issuing the sentencing order, and (4) considered an uncharged rape as nonstatutory aggravation.
[12] This Court receded from Campbell on different grounds in Trease v. State, 768 So.2d 1050, 1055 (Fla.2000).
[13] Given that the sentencing order in the instant case was issued two years after our decision in Campbell, it could be argued that the trial judge substantially complied with then-current procedural constructs. However, a determination in this regard is unnecessary as we conclude that the deficiency in the sentencing order does not constitute fundamental error.
[14] Fennie's allegation pertaining to the introduction of nonrecord evidence in the penalty phase closing argument is contravened by the record. Fennie is correct in his contention that the prosecutor misstated the law of sentencing by stating that a death recommendation was required if the aggravators outweighed the mitigators. However, we conclude that the prosecutor's misstatement was harmless as the jury received proper instruction from the trial judge. See Cox v. State, 819 So.2d 705, 718-19 (Fla.2002), cert. denied, 537 U.S. 1120, 123 S.Ct. 889, 154 L.Ed.2d 799 (2003).
[15] Compare Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003) (no improper consideration of nonstatutory aggravators where alleged aggravators constituted the facts of the case and were considered within the context of HAC) with Perry v. State, 801 So.2d 78, 90 (Fla. 2001) (improper to introduce testimony of appellant's violence against wife during the penalty stage where such acts were not related to any aggravating circumstances).
[16] Fennie's claim was based on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Subsequent to the filing of Fennie's initial petition, the Supreme Court released its decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which was then discussed in the State's response and Fennie's reply.